UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD STEELMAN, | |
|                     Plaintiff, | REPORT AND RECOMMENDATION |
| - against - | |
| | 01 Civ. 11216 (GBD) (RLE) |
| THE SANWA BANK LIMITED, NEW YORK BRANCH, | |
|                     Defendant. | |

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I.  INTRODUCTION

Plaintiff Donald Steelman ("Steelman") filed this action against The Sanwa Bank Limited ("Sanwa" or "the Bank") on December 6, 2001.  He alleges that the Bank discriminated against him on the basis of national origin because he is not Japanese, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981; Article 15 of the New York State Executive Law ("New York Human Rights Law" or "NYHRL"); and Title 8 of the New York City Administrative Code.  Sanwa has moved for partial judgment on the pleadings, arguing that some of plaintiff's claims are barred by statute of limitations.  Sanwa also asks that discovery be stayed pending resolution of the claims at issue.  For the reasons which follow, I recommend that the motion be denied, and deny the motion to stay discovery.

## II.  BACKGROUND

Steelman, an American male, began his employment with Sanwa in June 1989, as an Assistant Vice-President in the Capital Markets Group.  Compl. ¶¶ 2, 3, 10.  He alleges that Sanwa had a policy and practice of treating Japanese employees more favorably with regard to

promotions, salary and bonuses, communication, and other aspects of employment. **Id.** at ¶¶ 55, 57. According to Steelman, it became increasingly apparent during his employment that he was being surpassed in rank, title and salary because he is not Japanese. **Id.** at ¶¶ 15, 22, 23. He asserts that he was kept from advancing at the Bank because he is non-Japanese. **Id.** at ¶ 56. He contends that his ability to succeed in his job was continually jeopardized because Sanwa created communication channels which excluded him because he is not Japanese or which expressly required that he communicate through Japanese employees regardless of their familiarity with, or involvement in, his work. **Id.** at ¶¶ 24, 37, 40, 67-74. Consistent with this policy, the Bank held weekly staff meetings for all employees but additional staff meetings were held for Japanese employees only, and there was a system whereby only Japanese employees issued weekly reports. **Id.** at ¶¶ 34-36, 38. Steelman claims that he was denied promotion to head of his group because ". . . the head of the Groups under which [his] Securitization function operated was always an E-1 executive." **Id.** at ¶ 75. E-1 executives were Japanese nationals. **Id.** at ¶ 76.

In or about February 1999, Steelman formally complained about the Bank's alleged discriminatory conduct, and was terminated by Sanwa in or about May. **Id.** at ¶¶ 78-86.

The Bank argues that some of the acts complained of by Steelman are untimely because the statutory schemes relied on by Steelman all require that complaints be filed within a limited time frame after the alleged discriminatory acts. It notes, for example, that Title VII requires that a charging party in New York file a claim within 300 days of a violation. Steelman filed his EEOC charge on March 15, 2000. Therefore, Sanwa maintains that any alleged conduct which took place before May 20, 1999 (i.e. 300 days before March 15, 2000) is time-barred and should be dismissed. Similarly, because the statute of limitations for claims under Section 1981, the

NYHRL and the New York City Administrative Code is three years, Sanwa argues that any alleged discriminatory acts occurring prior to December 6, 1998 (three years before Steelman filed his Complaint), are also untimely, and should be dismissed.  Sanwa points to the following as examples of actions which happened outside the relevant time frame:

    1. in 1989, Steelman alleges that he was demoted when Mr. Takasaki was made head of the Financial Engineering Group;

    2.  in 1993, Steelman alleges that he was passed over for a promotion when Mr. Okura was made head of the Securitization Group;

    3. in 1995, Steelman alleges that he sought from Sanwa, but was denied, unpaid leave to study for law school exams;

    4.  Steelman alleges that he sought, but was denied, tuition reimbursement from Sanwa to attend law school; and

    5.  Steelman alleges that he sought, but was denied, a low interest loan by Sanwa.

Steelman counters that Sanwa's acts of discrimination continued unremedied against him for so long as to amount to a discriminatory policy or practice.  He notes that the complaint contains numerous allegations of a continuing policy and practice of discrimination, including:

    1. ¶ 15 - Sanwa "systematically treated Japanese employees more favorably";

    2. ¶ 32 - There were different "standards of practice operating simultaneously" for Japanese and non-Japanese employees;

    3. ¶ 34 - There were "weekly" meetings for Japanese staff only, from which plaintiff was excluded;

    4. ¶ 37 - Communication systems within the Bank were "set up to require" non-Japanese

staff to speak to superiors only through Japanese employees;

     5. ¶ 38 - There was a system at the Bank which required only Japanese employees to issue weekly reports;

     6. ¶ 39 - There was a system which included work-related social gatherings to which only Japanese employees were invited;

     7. ¶ 42 - There was a practice of Sanwa paying tuition for graduate programs in law and business only for Japanese employees; and

     8. ¶ 55 - The Bank had dual systems for promotions and compensation between Japanese and non-Japanese employees.

### III.  DISCUSSION

**A.  The Standard Pursuant to Federal Rules of Civil Procedure 12(c)**

The essential function of a motion under Rule 12(c) of the Federal Rules of Civil Procedure is a "summary disposition of cases that do not involve any substantive dispute that justifies trial." **Fortunet v. Chater**, 1996 WL 209980 (S.D.N.Y. Apr. 30, 1996).  The standard for resolving such a motion is the same standard used for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See, e.g.*, **Burnette v. Carothers**, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000).  The Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See* **Freedom Holdings, Inc. v. Spitzer**, 357 F.3d 205, 216 (2d Cir. 2004) (*citing* **Hernandez v. Coughlin**, 18 F.3d 133, 136 (2d Cir. 1994)); **Sheppard v. Beerman**, 18 F.3d 147, 150 (2d Cir. 1994).  The Court should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  **Sheppard v.**

**Beerman**, 18 F.3d at 150.  "This standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation.'"  **Id**. (citation omitted).

For purposes of this motion, a party's pleading "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  **Cortec Indus., Inc. v. Sum Holding L.P.**, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992); **Chambers v. Time Warner, Inc.**, 282 F.3d 147, 152 (2d Cir. 2002).

**B. The Continuing Violation Theory**

Prior to 2002, the continuing violation doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a "practice or policy" of discrimination.  *See* **Fitzgerald v. Henderson**, 251 F.3d 345, 359 (2d Cir. 2001). *See also* **de la Fuente v. DCI Telecomms., Inc.**, 259 F. Supp.2d 250, 266 (S.D.N.Y. 2003); **Branch v. Guilderland Cent. Sch. Dist.**, 239 F. Supp.2d 242, 253 (N.D.N.Y. 2003); **Stalter v. Bd. of Co-op. Educ. Servs. of Rockland County**, 235 F. Supp.2d 323, 332 (S.D.N.Y.2002); **Figueroa v. City of New York**, 198 F. Supp.2d 555, 564 (S.D.N.Y.2002).  A plaintiff could invoke the doctrine where an employer had "specific discriminatory policies or mechanisms," **Lambert v. Genesee Hosp**., 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994), or "where there ha[d] been specific and related instances of discrimination, and the employer ha[d] permitted them to continue unremedied for so long that its inaction [could] reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination," **Fitzgerald v. Henderson**, 251 F.3d at 362.  Where a plaintiff had experienced such a practice or policy, the statute of limitations would begin with the last discriminatory act in furtherance of the

practice or policy.  **Washington v. County of Rockland**, 373 F.3d 310, 317 (2d Cir. 2004). Though accepting the doctrine in theory at the time this motion was filed, the Second Circuit generally disfavored its use, *see, e.g.*, **Bernstein v. The MONY Group, Inc.**, 228 F. Supp.2d 415, 418 (S.D.N.Y.2002), *quoting* **Curtis v. Airborne Freight Corp.**, 87 F. Supp.2d 234, 244 (S.D.N.Y.2000); **Branch v. Guilderland Cent. Sch. Dist.**, 239 F. Supp.2d at 253; **Marinelli v. Chao**, 222 F. Supp.2d 402, 413 (S.D.N.Y.2002), and some trial courts applied it "only upon a showing of compelling circumstances." **Salgado v. City of New York**, 2001 WL 290051, at *5 (S.D.N.Y. Mar. 26, 2001), *citing* **Katz v. Beth Israel Med. Ctr.**, 2001 WL 11064, at *8 (S.D.N.Y. Jan. 4, 2001) *and* **Findlay v. Reynolds Metals Co.**, 82 F. Supp.2d 27, 37 (N.D.N.Y.2000).

Subsequent to the filing of the motion herein, the scope of the continuing violation doctrine was clarified and limited by the Supreme Court's decision in **National Railroad Passenger Corp. v. Morgan**, 536 U.S. 101 (2002).  The Court held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," but that these "discrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 113.  The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to hire" as examples of conduct which constituted a "discrete discriminatory act."  **Id.** at 114.  The Court also identified a hostile work environment claim as an example of allegation which would support the application of the continuing violation doctrine because such a claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" **Id.** at 117.  Thus, where a plaintiff alleged a hostile-environment claim, conduct outside the applicable limitations period could be asserted so

long as one act giving rise to the hostile-environment claim was within the limitations period. **Id.**; *see also* **Patterson v. County of Oneida**, 375 F.3d 206, 220 (2d Cir.2004); **Elmenayer v. ABF Freight Sys., Inc.**, 318 F.3d 130, 133-35 (2d Cir.2003); **Milani v. Int'l Bus. Machs. Corp.**, 322 F. Supp.2d 434, 452 (S.D.N.Y.2004); **Bailey v. Synthes**, 295 F. Supp.2d 344, 353-54 (S.D.N.Y.2003). The Second Circuit has not yet decided what, if any, patterns of discrimination besides a hostile work environment claim can constitute a single unlawful employment practice, **Burrowes v. Brookdale Hosp. and Medical Center**, 2003 WL 1240609 (2d Cir. Mar. 18, 2003), but post-**Morgan** cases have not sought to extend the doctrine beyond that circumstance. *See, e.g.*, **Elmenayer**, 318 F.3d at 134-135 (employer's rejection of employee's proposed accommodation of his religious process consisted of discrete acts rather than a continuing violation).

      Thus it appears that at least with respect to Title VII, Steelman may not be able to recover for discriminatory acts before the beginning of the statute of limitations date. The situation is somewhat less clear with respect to the NYHRL because the continuing violation theory may be broader under the state statutory scheme. *See* **Sunshine v. Long Island University**, 862 F. Supp. 26, 30 (1994) (New York doctrine focuses on "whether the discriminatory practice had a continuing impact on the complainant.") (*citing* **McClary v. Marine Midland Bank**, 450 N.Y.S.2d 109, 110 (4th Dep't 1982); *see also* **Miles v. Florsheim Shoe Store Co.-Northwest**, 1997 WL 43618, at *4 n.4 (S.D.N.Y. Feb. 4, 1997) (Plaintiff cannot rely on **Sunshine** and **McClary** because his claims did not involve claims of a policy of discrimination against a class of employees.). In contrast to the plaintiff in **Miles**, Steelman does allege discrimination against a class of persons, non-Japanese employees. His complaint sets forth multiple allegations of

policies and practices which discriminate against this class.  Whether any of these policies or practices have a "continuing impact" would be a factual determination and ill-suited for a 12(c) motion.

**C. The Propriety of a Motion for Partial Judgment on the Pleadings**

Rule 12(c) does not provide explicitly that a party may move for partial judgment on the pleadings.  There is no provision comparable to Rule 56(d), which allows a court to grant a motion for summary judgment even if the decision does not fully adjudicate the case.  Some courts, however, have reasoned that the rationale for granting a motion for partial summary judgment should apply to a request for a partial judgment on the pleadings.  *See, e.g.*, **Miles**, 1997 WL 43618, at * 4; **Chi-Mil Corp. v. W.T. Grant Co.**, 70 F.R.D. 352, 358 (E.D.Wisc. 1976); *see also* **City of Los Angeles v. Lyons**, 461 U.S. 95, 98-99 (1983) (Supreme Court notes that the district court granted plaintiff's motion for partial judgment on the pleadings.).  This conclusion finds support in the fact that a motion for judgment on the pleadings may "be treated as one for summary judgment" if matters outside the pleadings are considered by the court.  FED. R. CIV. P. 12(C).  The comparison to Rule 56, however, may undermine defendant's desire to use Rule 12(c) in the case before the Court.

A motion for judgment on the pleadings has "its historical roots in common law practice, which permitted either party, at any point in the proceeding, to demur to his opponent's pleading and secure a dismissal or final judgment on the basis of the pleadings."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509 (1999).  Discovery is not contemplated.  In contrast, a motion under Rule 56 generally requires at least some discovery to identify which material facts are not in dispute.  **Hellstrom v. U.S. Dep't of Veteran Affairs**,

8

201 F.3d 94, 97 (2d Cir. 2000). Indeed, if the Court decides to treat a Rule 12(c) motion as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion under Rule 56." FED. R. CIV. P. 12(C).

Assuming *arguendo* that Rule 12(c) can be used to dismiss some claims, but not all, there remains the question of what constitutes a claim. Sanwa identifies certain alleged acts of discrimination which it says are outside the applicable statute of limitations. It characterizes each of these incidents as "claims," and they are in a broad sense. However, in a legal context, a claim is "[t]he aggregate of operative facts giving rise to a right enforceable by a court <the plane crash led to dozens of wrongful death claims>." Black's Law Dictionary 240 (7th ed. 1999). In this case, Steelman has seven claims, or causes of action: (1) intentional discrimination in violation of Title VII; (2) intentional discrimination in violation of the New York State Human Rights Law; (3) intentional discrimination in violation of the New York City Administrative Code; (4) retaliation in violation of Title VII; (5) retaliation in violation of the New York State Human Rights law; (6) retaliation in violation of the New York City Administrative Code; and (7) discrimination in terms and conditions of employment in violation of 42 U.S.C. § 1981. Because Rule 12(c) is designed to eliminate the need for trial, it would seem to make sense to limit its partial application to an entire cause of action. As the Supreme Court indicated, even claims which may be time-barred are relevant background evidence and will undoubtedly be used in support of any timely claims.[1] **Morgan**, 536 U.S. at 113.

---

[1] Steelman complains that the Bank has brought this motion to avoid its discovery obligations. The request to stay discovery on the purported time barred claims lends credence to that assertion, but is moot here. Because the incidents are relevant in any case, there is no reason to stay discovery on these other incidents.

## IV. CONCLUSION

While it appears that some of the acts complained of by Steelman may be time-barred, at least with respect to the federal causes of action, Sanwa has not identified a cause of action which may be dismissed. Therefore, I recommend that the motion under Rule 12(c) be denied. I further recommend that the motion not be converted to a motion under Rule 56 because some discovery should be conducted. Finally, I deny Sanwa's motion to stay discovery as unwarranted under the facts or the law.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 40 Centre Street, Room 410, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: June 7, 2005**
**New York, New York**

                 **Respectfully Submitted,**

                 **The Honorable Ronald L. Ellis**
                 **United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

<u>For Plaintiff</u>:
Herbert Eisenberg
Eisenberg & Schnell
377 Broadway, 9th Floor
New York, NY 10013

<u>For Defendant</u>:
Lawrence R. Sandak
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark, NJ 07102